IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM JOHNSON,

                  Plaintiff,

    v.

PHILADELPHIA DISTRICT ATTORNEY'S
OFFICE, et al.,

                  Defendants.

CIVIL ACTION
NO. 24-36

## OPINION

**Slomsky, J.**                                                  **August 10, 2026**

## I.    INTRODUCTION

This case concerns the wrongful conviction and 18-year incarceration of Plaintiff William Johnson ("Plaintiff"), who filed this civil rights action pursuant to 42 U.S.C. § 1983 against the City of Philadelphia, Lynne Abraham in her official capacity as District Attorney of Philadelphia, John Doe as the Personal Representative of the Estate of former Detective Thomas Augustine, and former Detectives George Pirrone, Richard Harris, John McDermott, and Aaron Booker. Only Plaintiff Lynn Abraham has filed a Motion to Dismiss, specifically Count V, in which she is sued in her official capacity. For reasons that follow, Defendant Abraham's Motion to Dismiss Count V of the Third Amended Complaint (Doc. No. 96) will be granted.

## II.    BACKGROUND

### A. Factual Background

This case has an extensive factual history involving multiple criminal trials and appeals, but for the purposes of this Opinion, only the most pertinent are included.  The following facts

1

are taken from the Third Amended Complaint.  The well-pleaded allegations within the Complaint are treated as true for the purpose of evaluating a Motion to Dismiss.  Fowler v. UPMC Shadyside, 578 F.3d 203, 201–11 (3d Cir. 2009).

On August 25, 2005, at 2:00 a.m., off-duty Philadelphia Police Officer Terrence Flomo was shot and killed.  (Doc. No. 90 ¶ 26.)  Defendant Detectives Augustine, Pirrone, Harris, McDermott, and Booker ("Defendant Detectives") investigated.  (Id. ¶ 27.)  Defendant Detectives questioned Brenda Bowens and Nora Williams, who were present in the area of the shooting, but both women said that they had not witnessed anything.  (Id. ¶ 29.)  To expedite the case, Defendant Detectives arbitrarily selected photos of William Johnson and Mumin Slaughter, both of whom had open bench warrants, and threatened Bowens and Williams with criminal charges unless they falsely identified Johnson and Slaughter as the shooters.  (Id. ¶¶ 30–31.)  Based on the false coerced statements of Bowens and Williams, Slaughter[1] and Johnson were arrested and charged with murder. (Id. ¶ 38.)

In 2006, prior to Johnson's trial, Bowens sent a letter to District Attorney Lynne Abraham and trial prosecutor Carlos Vega, recanting her inculpatory testimony against Plaintiff and explaining she had been "threatened and forced" into providing it.  (Id. ¶ 39.)  Believing the letter to be "bullshit", District Attorney Abraham and Prosecutor Vega deliberately suppressed it in accordance with the policies, practices, and customs of the District Attorney's Office ("DAO").  (Id. ¶¶ 40, 42).

In 2009, Johnson was convicted of third-degree murder and sentenced to 30-60 years in prison.  (Id. ¶¶ 53, 62.)  In 2020, Johnson filed a Post-Conviction Relief Act Petition to vacate his

---

[1]  This case is related to Slaughter v. City of Philadelphia et al., a civil rights claim brought by Johnson's co-defendant Mumin Slaughter.  See No. 25-cv-7049 (E.D. Pa.).

conviction.  (Id. ¶ 69.)  During discovery, the government produced DAO's prosecution files,
including the long-suppressed Brady evidence.  (Id.)  Johnson then filed a motion under Federal
Rules of Civil Procedure 60(b)(3) and 60(b)(6), alleging the suppressed Brady evidence
compromised prior habeas proceedings, including an appeal to the Third Circuit Court of
Appeals.  (Id. ¶¶ 70, 73).  The Court granted the motion, vacated Johnson's conviction, and
granted a new trial.  In 2023, Johnson, who had always maintained his innocence, was finally
released after serving 18 years in prison.  (Id. ¶ 76.)

## B.  Procedural Background

This case has a long procedural history, beginning on January 4, 2024, when Johnson
filed his Complaint against the City of Philadelphia, the Philadelphia District Attorney's Office,
and individual Defendant Detectives, alleging constitutional violations under 42 U.S.C. § 1983.
(Doc. No. 1.)  For the purposes of this Opinion, however, the procedural history has been pared
down to only the issues relevant to the Motion to Dismiss (Doc. No. 96).

On February 3, 2026, Plaintiff filed the Third Amended Complaint.  (Doc. No. 90.)  In
Count V Plaintiff brought a Monell claim against former District Attorney Lynne Abraham in her
official capacity as a policymaker for the DAO and for the City of Philadelphia, alleging that she
failed, as a matter of policy, practice, or custom, to "properly train and supervise prosecutors
with respect to their constitutional obligations to disclose all material impeaching and
exculpatory evidence and in a custom and practice of suppressing impeachment and exculpatory
evidence on a subjective belief that the evidence was not reliable, all in violation of the
Fourteenth Amendment."  (Doc. No. 90 ¶ 109.)  On February 27, 2026, Defendant Abraham filed
a Motion to Dismiss Count V for Failure to State a Claim.  (Doc. No. 96.)   Plaintiff filed a

Response in Opposition to the Motion on March 9, 2026.  (Doc. No. 97.)  On March 18, 2026, Defendant Abraham filed the Reply.  (Doc. No. 99.)

Defendant's Motion to Dismiss for Failure to State a Claim as to Count V (Doc. No. 96) is now ripe for disposition.

### III.    ANALYSIS

At issue in the pending Motion to Dismiss is Count V of Plaintiff's Third Amended Complaint, in which Plaintiff brings a Monell claim against DA Abraham for having an unconstitutional policy, practice, or custom of (1) failure to properly train, supervise, and discipline prosecutors with respect to their constitutional obligations to disclose Brady evidence and (2) suppressing Brady evidence based on subjective beliefs about its reliability.  (Doc. No. 90 ¶ 109.)

Such a claim may be brought under the civil rights statute, 42 U.S.C. § 1983, which provides a remedy for deprivation of a right established under the United States Constitution and federal law when the deprivation is perpetrated by a state officer.  Estate of Smith v. Marasco, 318 F.3d 497, 505 (3d Cir. 2003).  Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  Therefore, to successfully bring a claim under § 1983, Plaintiff must allege (1) conduct by a person, (2) who acted under color of state law, (3) which caused a deprivation of a federally protected right.  West v. Atkins, 487 U.S. 42, 48 (1988).  What is at issue here,

4

however, is whether Plaintiff may bring a <u>Monell</u> claim against District Attorney Abraham as a final policymaker for the DAO, given that the DAO is neither a named nor a proper defendant.

### A.  Defendant's Motion to Dismiss the Count V <u>Monell</u> Claim Will Be Granted

In Count V of the Complaint, Plaintiff lodges a <u>Monell</u> claim against Defendant Abraham for suppressing <u>Brady</u> evidence and for failure to train and properly supervise DAO prosecutors. (Doc. No. 90 ¶ 109.)  Specifically, Plaintiff identifies DA Abraham as policymaker for both the DAO, and for the City "[t]o the extent the DAO is an agency of the City of Philadelphia. . . .". (<u>Id.</u> ¶ 108.)

In the Motion to Dismiss, Defendant Abraham argues that Plaintiff cannot properly assert an official-capacity <u>Monell</u> claim against DA Abraham because it is essentially a claim against the already-dismissed DAO, which is not subject to 42 U.S.C. § 1983 liability.  Additionally, Defendant Abraham argues that the Court's January 14, 2026 Order granting Plaintiff leave to amend his Complaint for the specific purpose of adding DA Abraham as a defendant did not constitute an adjudication on the amendment's propriety.  (Doc. No. 99 at 1.)  The Order was entered by the Honorable Judge Anita Brody.  On March 31, 2026, this case was transferred to the docket of the Honorable Judge Joel H. Slomsky.  The Court will discuss each of these arguments in turn.

#### 1.  Plaintiff May Not Assert a § 1983 Claim Against Defendant Abraham as a Policymaker for the DAO Because the DAO is Not a Suable Entity

In the Motion to Dismiss, Defendant argues that Plaintiff's <u>Monell</u> claim against DA Abraham, in her official capacity as a policymaker for the DAO, should be dismissed because it is essentially a claim against the DAO, which is not a suable entity under § 1983.  (Doc. No. 96-1 at 7-12.)

In Monell v. Dep't of Soc. Servs., the United States Supreme Court held that municipal entities can be subject to Section 1983 liability in limited circumstances.  436 U.S. 658, 690 (1978).  The gravamen of Monell and its progeny is that "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' – that is, acts which the municipality has officially sanctioned or ordered."  Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986).  In other words, the constitutional deprivation must have had its origin in the policy or custom of the municipality, or its deliberate indifference to a violation of a constitutional right, and liability based on the actions of city officials exists only where it can be shown that the officials acted in accordance with that policy or custom or deliberate indifference.  Monell, 436 U.S. at 694.

Accordingly, municipalities cannot be held liable under Section 1983 for the acts of employees based on the doctrine of respondeat superior or for other forms of vicarious liability.  See Monell, 436 U.S. at 692 (noting that the language of Section 1983 "cannot easily be read to impose liability vicariously on government bodies solely based on the existence of an employer-employee relationship with a tortfeasor"); Reitz v. County of Bucks, 125 F.3d 139, 146 (3d Cir. 1997) ("[L]iability simply cannot be predicated upon a showing of respondeat superior.").

Thus, under Monell, to plausibly state a Section 1983 claim against a municipality, a plaintiff must establish that (1) a constitutionally protected right has been violated, and (2) the alleged violation resulted from a municipal policy, custom, or deliberate indifference to a violation of a constitutional right.  Monell, 436 U.S. at 694–95, 698; see also Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990).

However, a municipality is not liable under Monell for the actions of its District Attorney undertaken in his or her "role as a prosecutor."  Whitfield v. City of Philadelphia, 587 F. Supp. 2d

6

657, 672 (E.D. Pa. 2008).  Put differently, "a municipality can only be held liable for the acts of its officials undertaken in an administrative capacity."  Id. at 671 (citing Williams v. Fedor, 69 F. Supp. 2d 649, 663 (M.D. Pa. 1999) (concluding that a municipality "cannot be held liable on the basis of the challenged 'prosecutorial decisions'")).

In the Motion to Dismiss, District Attorney Abraham primarily argues that a Monell claim cannot be brought against a District Attorney in their official capacity as a final policymaker for the DAO because the DAO is not a suable "entity" for purposes of § 1983 liability and has been dismissed as a party accordingly.  (Doc. No. 96-1 at 7–12.)

The Third Circuit has held that District Attorneys' offices are not "entities" subject to suit under 42 U.S.C. § 1983.  Reitz v. County of Bucks, 125 F.3d 139 (3d Cir. 1997).  Furthermore, an official-capacity suit is generally "in all respects other than name, to be treated as a suit against the entity."  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  From these principles, Defendant proposes a cogent syllogism: "if an official-capacity claim functions as a claim against the office, and the office cannot be sued, the official-capacity claim necessarily fails." (Doc. No. 96 at 11.)

Defendant insists that courts have already applied Reitz and Graham "in tandem to dismiss official-capacity claims against district attorneys where the pleading, in substance, seeks relief from a Pennsylvania district attorney's office,"  primarily relying on Dwight v. Krasner, No. 24-cv-2513, 2024 WL 4988974 (E.D. Pa. Dec. 5, 2024) (applying Graham and Reitz to dismiss an official-capacity Monell claim against DA Krasner, finding it indistinguishable from claims against the DAO, which is not an entity subject to § 1983 suit).  (See Doc. No. 96-1 at 10.)  Defendant alleges that Plaintiff's claim in Count V aims to sidestep Graham and resurrect the dismissed claim against the DAO by "strategically relabeling" it as a claim against Defendant

Abraham, asserting the same substantive allegations and identifying the same policies, practices, and customs of the DAO.  (Doc. No. 96-1 at 8.)

In response, Plaintiff highlights that Dwight involved a pro se plaintiff who asserted no policy or practice claims against the District Attorney.  (Doc. No. 97 at 7.)  Plaintiff also suggests that the Dwight court relied on factors other than the application of Graham and Reitz when dismissing the official-capacity claim against District Attorney Krasner.[2]  (Id.)

Instead, Plaintiff counters that Brown v. City of Philadelphia illustrates that a Monell claim may be brought against a District Attorney in his or her official capacity as a policymaker for the DAO without naming the DAO as a defendant.  No. 24-cv-1019, 2025 U.S. Dist. LEXIS 142267, at *7 (E.D. Pa July 24, 2025).  There, separate § 1983 claims against both the City of Philadelphia and former DA Seth Williams in his official capacity survived a motion to dismiss based on an unconstitutional policy "of the City and/or the DAO" without naming the DAO as a defendant.  Plaintiff also cites to a lone footnote in Bologna v. Krasner, No. 24-cv-3185, 2025 WL 1762101, at *26 n.23 (E.D. Pa. June 25, 2025) (finding "Plaintiff's Monell claim against the City of Philadelphia and DA Krasner proper because DA Krasner was sued in his official capacity as the District Attorney of Philadelphia.").

On the other hand, Defendant argues that because the Monell claim in Bologna took the form of a single claim against both the City and DA Krasner, Bologna "[a]t most . . . confirms that it is sufficient to plead against the City and identify the relevant policymaker; it does not

---

[2]    The Dwight court noted that "[d]istrict courts within the Third Circuit disagree about whether the DAO is a separate entity from the City of Philadelphia such that it can be sued separately under § 1983."  Dwight, 2024 WL 4988974, at *2 (citing Harper v. City of Philadelphia, No. 18-cv-365, 2018 WL 5784540, at *2 (E.D. Pa. Nov. 2, 2018)).

state (and the court was not asked to determine) that an official-capacity claim supplies a distinct vehicle to sue the DAO on a municipal liability theory under § 1983." (Doc. No. 96-1 at 12.)

The Court declines to contravene the overwhelming case law which has historically dismissed standalone official-capacity Monell claims against District Attorneys—particularly in view of binding precedent set forth in Graham and Reitz. Contrary to Plaintiff's wishes, the outcome of Dwight was not driven by the plaintiff's pro se status or the specificity of the allegations against Krasner. Rather, Dwight resolved the very discrete issue Plaintiff faces here by reasoning that the claim against DA Krasner was "indistinguishable from claims against the governmental entity that employs him, here the Philadelphia DAO", and pursuant to Reitz, DAOs "are not entities subject to suit under § 1983." Dwight, 2024 WL 4988974, at *3.

Nor does Bologna stand for the position that a Monell claim against the City can serve as a substitute for a standalone official-capacity claim against a District Attorney. Importantly, in Bologna, the plaintiff asserted a single Monell claim against the City, naming Krasner as a policymaker within that same claim.[3]

Plaintiff's reliance on Brown is similarly misplaced. There, although the plaintiff was allowed to assert separate claims against the City and DA Seth Williams, this was due to a pending appeal in the Pennsylvania Supreme Court on the issue of whether the DAO is a separate entity from the City and thus independently amenable to suit. Brown, 2025 U.S. Dist. LEXIS 142267, at *14. It was for these procedural (rather than substantive) reasons that the court in Brown declined to dismiss the DA as a defendant. Id.[4]

---

[3]  This case is currently on appeal to the Third Circuit. Bologna v. Krasner, No. 25-371 (E.D. Pa. July 28, 2025).

[4]  In fact, the court took care to note that "Brown's claims against Defendant Seth Williams in his official capacity are essentially the same as claims against Williams' former employer, the

Therefore, to allow Count V to move forward would subvert a large, clear body of caselaw.  Accordingly, Count V will be dismissed, and former District Attorney Lynne Abraham dismissed as a Defendant in this case.

### 2. The Court Did Not Automatically Sanction Plaintiff's Substitution of Defendant Abraham when Granting Leave to Amend the Complaint

Finally, in the Response in Opposition to the Motion to Dismiss, Plaintiff argues that Judge Brody's January 14, 2026 Order granting leave to amend the Complaint for the stated purpose of substituting District Attorney Abraham in her official capacity as a policymaker for the DAO indicated acquiescence to this theory of liability.  (Doc. No. 97 at 5).  Conversely, Defendant maintains that the Court did not implicitly adjudicate the merits of this substitution when granting Plaintiff leave to amend.  (Doc. No. 99 at 1–3.)  Defendant further asserts that Plaintiff's position allow him  "…to reassert, in different dress, the same legally defective cause of action against the same non-suable entity the Court has already properly dismissed", the DAO.  (Doc. No. 96-1 at 12).

Under Federal Rule of Civil Procedure 15, a court may freely grant a party leave to amend a complaint when justice so requires.  Fed. R. Civ. P. 15(a)(2).  Rule 15 "embodies a liberal approach to pleading." Arthur v. Maersk, 434 F.3d 196, 202 (3d Cir. 2006).  However, a court may deny leave to amend upon a showing of various factors including undue delay, prejudice to the opposing party, or bad faith. Id. (citing Foman v. Davis, 317 U.S. 178, 182 (1962)).  But absent a showing of one of those factors, the mandate set forth in Rule 15 must be heeded.  Foman, 317 U.S. at 182.  Furthermore, Rule 15 allows amendment to "change[] the

---

Philadelphia District Attorney's Office…" citing Graham.  Brown, 2025 LEXIS 142267, at *6 n.4.

party or the naming of the party against whom a claim is asserted…".  Fed. R. Civ. P.

15(c)(1)(C)

Here, Plaintiff sought leave to amend his Second Amended Complaint in the event the

Court dismissed the DAO as a Defendant "…to assert the same claim against Lynne Abraham, in

her official capacity as the District Attorney of Philadelphia." (Doc. No. 82 at 8.)  But while

Judge Brody's January 14, 2026 Order granting Plaintiff leave to amend his Complaint

acknowledged Plaintiff intended "to amend his complaint and substitute DA Abraham as a

Defendant in her official capacity," the Order did not explain whether or why an official-capacity

claim against District Attorney Abraham might be proper.  (Doc. No. 86 at 3.)  Thus, the Court's

decision to grant leave to amend does not endorse the merits of the amendment.  The Court

simply acted within its discretion pursuant to Rule 15.

## V.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Failure to State a Claim

(Doc. No. 96) will be granted.  An appropriate Order follows.